UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BARBARA MARLER, )<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>AUTOZONE, INC., )<br>)<br>Defendant. ) | Case No. 4:04CV01323 ERW |

## MEMORANDUM AND ORDER

This matter comes before the Court upon Defendant's Motion for Summary Judgment [doc. #12]. For the reasons below, the motion is granted.

**I. BACKGROUND**

Barbara Marler began working for Auto Shack, Defendant AutoZone Inc.'s predecessor, in 1988. She has held various positions including: Part Sales Manager, Assistant Store Manager, and Store Manager. In October 2002, Plaintiff was transferred to AutoZone store number 261 in Affton, Missouri. She worked as a part-time Parts Sales Manager. She was promoted to full-time Parts Sales Manager within a month. She was supervised by Assistant Store Manager, Sharon Ripplemeyer,[1] and Store Manager, Dan York.

From the time that Plaintiff was transferred to the Affton store, she had conflicts with Ripplemeyer. Marler believed that Ripplemeyer lacked management and people skills, was unpleasant for all employees to work with, was difficult to get along with, and unprofessional. Plaintiff claims

---

[1]Plaintiff's Response indicates the spelling of her name is instead, Sharon Rippelmeyer.

1

that, *inter alia*, Ripplemeyer (1) screamed at her in front of customers; (2) slammed, pushed and kicked things when angry, and (3) quarreled repeatedly with Plaintiff and other AutoZone workers regarding scheduling and other issues. Other employees also disliked Ripplemeyer for the way Ripplemeyer treated them. However, Plaintiff admits that her problems with Ripplemeyer did not affect her job performance. Also, Plaintiff admits that the alleged harassment by Ripplemeyer was not due to race or sex. Indeed, Plaintiff and Ripplemeyer are the same sex and race.

York recommended to his supervisors that Plaintiff and Ripplemeyer needed to be separated. Plaintiff attended a meeting with York, Ripplemeyer, and Ed Davis, an AutoZone district manager, after a confrontation between Plaintiff and Ripplemeyer wherein Ripplemeyer allegedly wrote "peon" on Plaintiff's name tag. During that meeting, Plaintiff asked for a transfer. However, she withdrew the request the next day, and instead indicated her intention of writing a formal complain to the human resources department. Defendant did not transfer Ripplemeyer or Plaintiff to a different store.

On October 5, 2003, Plaintiff drafted a letter to Tracy Barham, AutoZone's Regional Human Resources Manager. Plaintiff detailed her problems with Ripplemeyer explaining that her work environment was "hostile and stressful." Barham investigated Plaintiff's complaint but never spoke with or contacted Ripplemeyer, nor did Barham notify Plaintiff in writing when she had concluded her investigation into Plaintiff's complaints. Barham allegedly developed a "plan of action" wherein York would be "highly involved." It is unclear from the evidence presented what that "plan of action" entailed.

From November 2003 to April 2004, there were no altercations between Plaintiff and Ripplemeyer, although tension remained. In May 2004, Plaintiff's physician prescribed her blood pressure medication. Plaintiff cut back her hours due to her problems with Ripplemeyer, ultimately

tendering her resignation on May 23, 2004 due to the stress of the alleged harassment by Ripplemeyer. Barham did not interview Ripplemeyer for approximately two months after Plaintiff resigned. On July 29, 2004, Defendant terminated Ripplemeyer for "unauthorized removal of AutoZone merchandise, failure to properly account for the sale of merchandise, conduct detrimental to AutoZone, and improper cash register procedures."

As a manager and long-time employee of AutoZone, Plaintiff was aware of AutoZone's Handbook, which contains provisions relating to sexual harassment. Defendant's anti-harassment policy is also in its Code of Conduct, which was received and reviewed by Plaintiff. Plaintiff also signed AutoZone's "Preventing Sexual Harassment, A Fact Sheet for AutoZoners." The Fact Sheet detailed AutoZone's sexual harassment policy. In addition, Plaintiff viewed a video relating to harassment during her new employee job orientation.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Crumley v. City of St. Paul, 324 F.3d 1003, 1006 (8th Cir. 2003). The United States Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 1).

"'By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual

3

dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Hufsmith v. Weaver, 817 F.2d 455, 460 n.7 (8th Cir. 1987) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis added by Supreme Court)). Material facts are "those 'that might affect the outcome of the suit governing law.'" Id. (quoting Anderson, 477 U.S. at 247-48). Summary judgment will be denied due to a material issue of genuine fact if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Crumley, 324 F.3d at 1006. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, quoted in St. Jude Med., Inc. v. Lifecare Intern., Inc., 250 F.3d 587, 595 (8th Cir. 2001).

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. Crumley, 324 F.3d at 1006 (citing Lynn v. Deaconess Med. Ctr.-W. Campus, 160 F.3d 484, 487 (8th Cir. 1998)). The burden then shifts to the non-moving party who must set forth specific evidence showing that there is a genuine dispute as to material issues. Anderson, 477 U.S. at 249. To meet its burden, the non-moving party may not rest on the pleadings alone and must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

In analyzing summary judgment motions, the court must view the evidence in the light most favorable to the non-moving party. Crumley, 324 F.3d at 1008. The non-moving party is given the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 586.

The court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." Kampouris v. St. Louis Symphony Soc., 210 F.3d 845, 847 (8th Cir. 2000). The court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." Id.

## III. ANALYSIS

### A. Hostile Work Environment

Title VII of the Civil Rights Act of 1964[2] provides, *inter alia*, that "[i]t shall be an unlawful employment practice for an employer to. . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or]. . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). "The fundamental issue is whether members of one sex are subjected to unfavorable conditions of employment that the members of the opposite sex are not." Duncan v. General Motors Corp., 300 F.3d 928, 933 (8th Cir 2002); Hesse v. Avis Rent a Car System, Inc., 394 F.3d 624, 630 (8th Cir. 2005). "A plaintiff may prevail in a discrimination claim by showing the inappropriate conduct creates a 'hostile work environment.'" Baker v. John Morrell & Co., 382 F.3d 816, 828 (8th Cir. 2004).

In order to present a prima facie claim of hostile work environment, the Plaintiff must show that (1) she is a member of a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex, race or some other protected group; and (4) the harassment

---

[2]The Court will only analyze Plaintiff's federal claims because the same analysis applies to Plaintiff's MHRA claims. See, Johnson v. AT & T Corp., 422 F.3d 756, 764 (8th Cir. 2005).

5

affected a term, condition, or privilege of her employment. Baker, 382 F.3d at 828; Hesse, 394 F.3d at 629; Hocevar v. Purdue Frederick Co., 223 F.3d 721, 736 (8th Cir. 2000); and Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). The unwelcome sexual harassment must permeate the workplace and be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" Harris, 510 U.S. at 21. The harassment must both objectively and subjectively affect a term, condition, or privilege of employment. Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998); Baker, 382 F.3d at 828.

Courts consider the totality of the circumstances when determining if the harassment is objectively offensive. Baker, 382 F.3d at 828; Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 81 (1998). Courts will look at factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance to determine whether the harassment was sufficiently severe. Faragher, 524 U.S. at 787-88. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" will not be sufficiently severe because the purpose of Title VII is not to be a "general civility code." Id. at 788 (internal citations omitted); Hesse, 394 F.3d at 630.

In this case, Plaintiff fails to present a prima facie case of hostile work environment. The alleged harassment was not based on Plaintiff's race or sex. Indeed, Plaintiff is the same race and sex as Ripplemeyer. Furthemore, Plaintiff admits that Ripplemeyer treated everyone the same way, and that most, if not all, of the other AutoZone employees, both male and female, disliked Ripplemeyer for the way she treated them.

**B. Wrongful Discharge**

6

Plaintiff claims that she was forced to resign, and thus, was constructively discharged. Typically, an at-will employee may be discharged with or without cause.[3] The public policy exception, upon which the Plaintiff relies, is a narrow exception to the rule that an at-will employee may be discharged without cause. Boyle v. Vista Eyewear, Inc., 700 S.W.2d 859, 871 (Mo. Ct. App. 1985). "Public policy is that principle of law which holds that no one can lawfully do that which tends to be injurious to the public or against the public good." Id. (internal citations omitted). Missouri law recognizes that the exception should be applied when an employee is fired for (1) "declining to violate a statute," (2) "reporting violations of the law by employers or fellow employees;" or "(3) asserting a legal right." Callantine v. Staff Builders, Inc., 271 F.3d 1124, 1130 (8th Cir. 2001). "The public policy exception to the at-will employment doctrine also requires proof of violation of a constitutional provision, a statute, a regulation, or other clear mandate of public policy." Id. (internal citations omitted).

Plaintiff alleges that her constructive discharge falls under the public policy exception to the at-will employment doctrine. Plaintiff argues that "after giving Defendant written notice, [she] was left in a situation where she continued to be emotionally and mentally harmed by Rippelmeyer." Assuming arguendo that Plaintiff was constructively discharged, Plaintiff simply presents no evidence that her discharge was for refusing to violate a statute, reporting violations of the law, or asserting a right. See id. Thus, Plaintiff has failed to present a prima facie case of wrongful discharge.

Accordingly,

---

[3]However, under Missouri law, an employee may not be discharged or constructively discharged based on her "race, color, religion, national origin, sex, ancestry, age or disability." Mo. Rev. Stat. § 213.055(1)(a). Here, as discussed supra, Plaintiff does not allege she was constructively discharged based on race, sex or any other protected category.

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment [doc. #12] is **GRANTED**.

**IT IS ORDERED** that Plaintiff's Complaint is **DISMISSED** with **PREJUDICE**.

An appropriate order of dismissal will accompany this Order.

Dated this 6th day of December, 2005.

_E. Richard Webber_
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE